**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>William Lee Strickland,<br><br><br><br>                                         Debtor. | Case No. 12-07110-dd<br><br>Chapter 12<br><br>**ORDER GRANTING**<br>**MOTION TO DISMISS** |

This matter is before the Court on a motion to dismiss entered by Horry County State Bank ("HCSB") on January 7, 2013, which was joined by First Citizens Bank & Trust Company, Inc. ("First Citizens") on January 25, 2013. The debtor, William Lee Strickland ("Debtor"), submitted a response in opposition. The Court held a hearing regarding the motion to dismiss on February 21, 2013. At the hearing, the Chapter 12 Trustee ("Trustee") indicated he also joined HCSB's motion to dismiss. After careful consideration, the Court grants the motion to dismiss filed by HCSB and joined by First Citizens and the Trustee.

**FINDINGS OF FACT**

Debtor filed his petition for relief under Chapter 12 of the Bankruptcy Code on June 28, 2012. Debtor, proceeding *pro se*, previously filed a chapter 13 proceeding, No. 11-05481-jw, on September 1, 2011. Although Debtor filed certain schedules in that case, he did not file a plan, and the case was dismissed on November 29, 2011.

In the present case, HCSB holds three secured claims against Debtor: claim 4-1 in the amount of $33,405.89, claim 5-1 in the amount of $371,508.42, and claim 6-1 in the amount of $40,278.70. These claims are based on loans to Debtor that are primarily secured by real property, crops, farm equipment, and house moving equipment Debtor owns. HCSB asserts the loans are, in part, cross collateralized. HCSB is also the holder of claim 7-1, which is an

1

unsecured claim in the amount of $254,720.74. First Citizens is the holder of two secured claims against Debtor: claim 10-1 in the amount of $12,633.96 and claim 11-1 in the amount of $42,140.77.

Debtor filed his initial chapter 12 plan on September 25, 2012. HCSB objected to confirmation. The Court held a confirmation hearing on December 10, 2012. That same day, Debtor submitted an amended chapter 12 plan and two motions to value security interests, which have a 28-day objection period. One motion to value seeks to value at zero security interests several creditors hold in the form of judicial liens on real property on which HCSB also holds liens. This motion listed known judgment lien holders as Allen Powers, Battle Oil, BB&T, First Citizens Bank, Ford's Fuel Service, Inc., Horry County Hospitality Fee, NBSC, and possibly the South Carolina Department of Revenue. The other motion to value seeks to value HCSB's security interests in the real and personal property that serve as collateral for HCSB's loans to Debtor. The motion seeks to value the crops that serve as collateral for claim 4-1 at zero, the real estate that serves as collateral for claim 5-1 at $207,190; the farm equipment that serves as collateral for claim 5-1 at $26,000; and the farm and house moving equipment that serves as collateral for claim 6-1 at $17,600. Debtor's September 4, 2012 schedules A and B value the real estate at $747,900 and the farm equipment at $26,100. Debtor filed amended schedules on December 10, 2012, reflecting the values asserted in his motion to value HCSB's security interests with the exception of the farm equipment, which is valued at $23,000 in the amended schedules.[1] Debtor's December 10, 2012 plan was based on the valuations set forth in the two motions to value. At the December 10, 2012 hearing, Debtor consented to the denial of confirmation of the September 25, 2012 plan and indicated there would need to be a ruling on the

---

[1] These schedules were withdrawn on January 4, 2013, and refiled because the wrong case number had been placed on the schedules.

2

valuations prior to confirmation. Debtor also agreed that confirmation of the December 10, 2012 plan could not proceed at that time because the objection period for the motions to value had not run and because of concerns over whether there was proper notice of the December 10, 2012 plan. The Court's September 26, 2012 notice of pre-confirmation conference and confirmation hearing stated that any amended plan to be considered at the confirmation hearing "must be filed not later than seven (7) days prior to the hearing." *See* Bankr. D.S.C. R. 2082-1(d) ("Any amended plan resulting from the [pre-confirmation] conference must be filed with the Court and served on the trustee and all creditors and equity security holders at least seven (7) days before the hearing on confirmation of the debtor's plan, in order to be considered at the confirmation hearing.").

Between the December 10, 2012 hearing and a second hearing scheduled for January 17, 2013, HCSB objected to the motion to value its security interests, objected to confirmation of the December 10, 2012 plan, and filed a motion to dismiss. In addition, First Citizens objected to the motion to value its security interest and objected to confirmation. The Trustee objected to confirmation. The December 11, 2012 notice for the January 17th confirmation hearing again stated any further amended plan to be considered at the hearing "must be filed not later than seven (7) days prior to the hearing." The January 17th hearing was rescheduled to January 22, 2013. Less than seven days before the hearing, on January 18, 2013, Debtor filed a further amended plan. On January 22, 2013, he filed an addendum to this further amended plan.

At the January 22d hearing, Debtor agreed that the December 10, 2012 plan was the plan before the Court and stated that the January 18th plan made only administrative changes. The Trustee could not agree at the hearing to Debtor's contention that the January 18th plan only made administrative changes because there was not sufficient time before the hearing to review

it.  HCSB and First Citizens also were not in a position to agree that the changes were administrative only.  Monsanto Company and Monsanto Technology, LLC (collectively referred to herein as "Monsanto"), which is a judgment lien holder, appeared at the hearing.  The issue was raised as to whether Monsanto had proper notice of the motion to value its judgment lien as the December 10, 2012 motion to value the security interests of the judgment lien holders does not name Monsanto as a creditor whose interest is being valued.  Additionally, while the notice refers to liens on real estate, it does not reference liens on personal property such as farming and house moving equipment.  On January 21, 2013, Monsanto filed an adversary proceeding asserting, among other things, that the debt owed to it is non-dischargeable under 11 U.S.C. § 523(a)(3)(A) because Debtor failed to timely and properly notify Monsanto of this bankruptcy proceeding, thus depriving Monsanto of the opportunity to file a proof of claim for the debt owed to it.  There was insufficient time to complete the hearing on the plan and motions to value on January 22d.

The Court scheduled a third hearing for February 21, 2013.  With respect to the January 18, 2013 plan, HCSB, Monsanto, First Citizens, and the Trustee objected to confirmation after the January 22d hearing.  Also subsequent to the January 22d hearing, First Citizens joined HCSB's motion to dismiss.  On February 5, 2013, Debtor filed an amended motion to value the judgment lien holders' security interests, which specifically lists Monsanto but again only references real property and not personal property.  This motion has a 28-day objection period, meaning the objection period did not run prior to the February 21st hearing.  On February 13, 2013, Debtor filed a third amended plan.  HCSB and First Citizens submitted objections to the February 13, 2013 plan.

4

At the February 21st hearing, the Court could not consider confirmation because the proposed plan was based on valuations set forth in the February 5, 2013 amended motion to value for which the objection time had not run. The Court heard the motion to dismiss filed by HCSB and joined by First Citizens and the Trustee. HCSB introduced numerous exhibits into evidence, including a police report Debtor filed on February 1, 2013, with the Horry County Police Department, a UCC financing statement, and Debtor's tax returns for 2008 through 2011.

The police report indicates that Debtor reported an alleged breach of trust by HCSB. According to the report, Debtor stated that "in 2005 he made a verbal agreement with a representative of HCSB (suspect) that if he gave HCSB a check for $169,958, they would release the mortgage they held on multiple acres of property around his house." Debtor also stated that "when he inquired several weeks later, he was told the bank would not be releasing the mortgages" and that "he did not pursue charges at that time because he still had business dealings with the bank and did not want to 'upset the apple cart.'"

The UCC financing statement has an August 9, 2011 filing date, lists Mark-Shannon Manuel as the filing party, and lists Debtor and HCSB in various places. Some of the pages in the packet introduced into evidence have a stamp indicating they were filed with the Horry County, South Carolina Registrar of Deeds on October 15, 2012. Debtor's real property is located in Horry County. While the financing statement is difficult to follow, Debtor acknowledged at the hearing that it was filed in an attempt to satisfy his debt to HCSB. Debtor also stated it was filed on the advice of Mr. Manuel, a person Debtor met at the bankruptcy courthouse on a previous occasion, and without first consulting his attorney.

Debtor's tax returns for 2008 through 2011 indicate the following regarding the income generated by his various sources of income, including farming, a house moving business he owns called Mega Movers, and a racetrack he owns called Pleasant View 4X4:

| **Year:** | **2008** | **2009** | **2010** | **2011** |
|---|---|---|---|---|
| Mega Movers profit or loss: | (-$64,525.40) | $1,503.28 | (-$2,449.71) | $11,215.00 |
| Racetrack profit or loss: | $22,803.07 | $5,883.19 | (-$13,452.49) | $2,150.00 |
| Business income or loss: | (-$41,722.33) | $7,386.47 | (-$15,902.20) | $13,365.00 |
| Farm income: | $32,921.17 | (-$12,900.83) | (-$6,019.74) | $13,191.67 |
| Capital gain or loss: | $0 | (-$2,041.00) | $33,890.50 | $0 |
| Total income: | (-$8,801.16) | (-$7,555.36) | $11,968.56 | $26,556.67 |

At the February 21st hearing, Debtor was unable to testify as to his income for 2012 aside from stating his belief that his businesses had performed better than in previous years.

Debtor testified that he will farm in 2013 under a sharecropping arrangement with Kyle Cox under which Mr. Cox fronts the expenses for planting and maintaining the crops. At harvest time, the parties then split the profits remaining after paying expenses, including those fronted by Mr. Cox. Debtor has not provided any writing demonstrating his agreement with Mr. Cox. According to Debtor, the arrangement with Cox is necessary because in the past Debtor would take out a loan with lenders such as HCSB at the beginning of the year to cover the cost of planting crops and then pay back the loan. As a result of his financial difficulties, Debtor is no longer able to obtain this type of financing and has to enter into a sharecropping arrangement instead. Debtor introduced into evidence a spreadsheet containing his income projections for 2013:

| | |
|---|---|
| Farming income from corn: | $143,325.00 |
| Farming expenses: | $95,625.00 |
| Net farm income: | $47,700.00 |
| Kyle Cox's share of farming profits: | $23,850.00 |
| Debtor's share of farming profits | $23,850.00 |

| | |
|---|---|
| Racetrack income: | $34,000.00 |
| Racetrack expenses: | $12,200.00 |
| Net racetrack income: | $21,800.00 |
| | |
| Mega Movers income: | $54,000.00 |
| Mega Movers expenses: | $40,000.00 |
| Net Mega Movers income: | $14,000.00 |
| | |
| Total net income: | $59,650.00 |

Debtor's February 13, 2013 plan calls for semi-annual payments of $16,113.08 due on January 31st and July 31st of each year. The plan calls for Debtor to surrender the real estate on Pinckney Road and pay the value of $233,190 plus interest for the land and farming equipment securing HCSB's claim 5-1. As for HCSB's other collateral, the plan values the house-moving equipment at $17,600 and the crops at zero. Debtor made his first trustee payment in the amount of $15,075 in January 2013.

## CONCLUSIONS OF LAW

Under 11 U.S.C. § 1208(c), "[o]n request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause." The enumerated causes for dismissal under section 1208(c) include "unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors." The list of what constitutes cause for dismissal under section 1208(c) is not exhaustive and other factors may be considered as well, including feasibility and bad faith. *See In re Euerle Farms, Inc.*, 861 F.2d 1089, 1091 (8th Cir. 1988); *In re Hyman*, 82 B.R. 23, 24 (Bankr. D.S.C. 1987).

**a. Unreasonable delay**

The Court finds that Debtor's case is subject to dismissal under 11 U.S.C. § 1208(c)(1) because of unreasonable delay. Debtor had 90 days from the order for relief under chapter 12 to file his plan and waited until the 89th day on September 25, 2012, to make the filing. *See* 11

U.S.C. § 1221. Over two months later on the day of the confirmation hearing, December 10, 2012, Debtor filed an amended plan. He also waited until December 10, 2012, to file the motions to value upon which the December 10th and subsequent plans are based. At the December 10th hearing, Debtor consented to the denial of confirmation of the September 25th plan and indicated there would need to be a ruling on the valuations prior to confirmation. Debtor also agreed that confirmation of the December 10th plan could not proceed at that time because the objection time for the motions to value had not run and because of concerns over whether there was proper notice of the December 10th plan. The Court's September 26, 2012 notice of pre-confirmation conference and confirmation hearing stated that any amended plan to be considered at the confirmation hearing "must be filed not later than seven (7) days prior to the hearing." *See* Bankr. D.S.C. R. 2082-1(d) ("Any amended plan resulting from the [pre-confirmation] conference must be filed with the Court and served on the trustee and all creditors and equity security holders at least seven (7) days before the hearing on confirmation of the debtor's plan, in order to be considered at the confirmation hearing.").

The Court scheduled a second hearing for January 22, 2013. Again less than seven days prior to the January 22d hearing, Debtor filed a second amended plan on January 18, 2013. Although Debtor's counsel represented that the January 18th plan made only administrative changes, the Trustee and objecting parties were unable to agree to such a stipulation. At the January 22d hearing, it became unclear as to whether Monsanto had proper notice of Debtor's motion to value the judgment lien held by it. While Debtor never conceded that Monsanto did not have proper notice, Debtor filed, on February 5, 2013, an amended motion to value the judgment lien holders' security interests, which specifically lists Monsanto. This motion has a 28-day objection period, meaning the objection period did not run prior to the third hearing on

February 21, 2013. Debtor filed a third amended plan on February 13, 2013. The fact that it was filed more than seven days prior to the February 21st hearing is of no moment because confirmation could not move forward at the February 21st hearing as the objection time had not run on the amended motion to value the judgment lien holders' security interests. At the February 21st hearing, Debtor and HCSB announced an agreement regarding the value of HCSB's collateral. However, the values announced were greater than the values used in Debtor's February 13th plan; thus, a fourth amended plan will be necessary. Moreover, First Citizens and Monsanto also have liens on the collateral securing HCSB's loans and may object to the valuations agreed upon between Debtor and HCSB in addition to objecting to the motion to value their security interests at zero.

In sum, Debtor has twice filed amended plans less than seven days before a confirmation hearing. *See* Bankr. D.S.C. R. 2082-1(d). In addition, Debtor delayed until the day of the first confirmation hearing, over five months into this case, to file motions to value for collateral that must be valued in order for Debtors' proposed plan to be confirmable. The first motion to value did not list one judgment lien holder, Monsanto, and an amended motion to value became necessary. As a result, on two occasions confirmation could not proceed at hearings scheduled by the Court because valuations were not in place. Even at the January 22d hearing where the Court heard some evidence related to confirmation, it was not clear whether confirmation could proceed because Monsanto was not named in the initial motion to value the judgment lien holders' security interests. At this juncture, more than eight months into this case, the most recent proposed plan clearly cannot be confirmed because it uses values less than those to which Debtor and HCSB have agreed. In addition, valuations are still in question because the judgment lien holders may object to the valuation of their security interests at zero and may object to the

9

valuations proposed by Debtor and HCSB. Based on the current posture of this case, the Court concludes that dismissal is appropriate under 11 U.S.C. 1208(c)(1) for unreasonable delay that is prejudicial to creditors such as HCSB, which asserts it has not received a payment in over two years on the debt owed to it.

**b. Feasibility**

The Court also finds dismissal proper because the evidence in the record indicates that Debtor's business endeavors are not sufficiently profitable to propose a feasible chapter 12 plan. *See Euerle Farms*, 861 F.2d at 1091-92 (finding bankruptcy court did not err where it concluded a "debtor's income and expense projections presented were so inconsistent with past performance to indicate no possibility that the projections would be met" and found the "debtor was incapable of effectuating a plan"). Under Debtor's February 13, 2013 plan, he proposes to make semi-annual payments of $16,113.08. Assuming the values upon which Debtor and HCSB announced they had agreed at the February 21st hearing are the values ultimately used, Debtor's plan payment will have to increase under his next amended plan because the agreed-upon values are higher than those used in the February 13th plan. However, based on his tax returns for 2008 through 2011, Debtor had negative income for the years 2008 and 2009, had positive income in 2010 because of capital gains, and had positive income of $26,556.67 in 2011. Consequently, his income for 2008 through 2011 would not allow him to make an annual plan payment of over $30,000 and leave money for his living and business expenses. At the hearing on February 21, 2013, Debtor provided no clear indication of what his income was in 2012, although he stated his belief that it had improved over previous years. Debtor provided little evidence to support his projection that his total net income would be $59,650.00 this year. He speculated the racetrack would perform better in 2013 than in past years and indicated he had heard corn prices would be

10

high in 2013. While the Court acknowledges Debtor made his first plan payment, there is little evidence in the record indicating that Debtor can propose a feasible plan and much evidence suggesting the contrary. Therefore, the Court concludes that dismissal is appropriate because Debtor's business endeavors are not sufficiently profitable to allow Debtor to propose a feasible plan or complete a plan by making the necessary payments for the five-year period Debtor proposes.

The Court also finds a lack of feasibility is indicated by the sharecropping arrangement into which Debtor must enter in order to continue farming. *See* Debtor's Fed. R. Bankr. P. 2004 Examination, Nov. 28, 2012, pp. 20-21 (Docket # 116). Debtor indicates that his current sharecropping arrangement is with Mr. Cox. Debtor in the past two years had a sharecropping arrangement with a different individual. No written memorialization of the arrangement with Mr. Cox has been provided to the Court. In addition, no assurances have been provided that Mr. Cox will continue to sharecrop with Debtor for the full five-year plan period.

**c. Bad faith**

Finally, the Court concludes this case should be dismissed because Debtor has acted in bad faith. His bad faith conduct includes the filing of the police report with the Horry County Police Department on February 1, 2013, listing HCSB as a suspect based on alleged conduct that occurred in 2005. Filing a police report under these circumstances indicates an abuse of the criminal process to gain an advantage in a bankruptcy case. Additional bad faith conduct includes the UCC financing statement, which Debtor filed on the advice of Mr. Manuel, a person he met at the bankruptcy courthouse on a previous occasion, and without first consulting his attorney. Debtor stated the financing statement constituted an attempt to satisfy his debt to HCSB. The financing statement, which is difficult to discern and contains references to certain

"registered bonded promissory note[s]" in various amounts, was clearly improper and is indicative of discredited and abusive legal theories. The Court also finds bad faith indicated by Debtor's failure include Monsanto as a creditor in his initial schedules filed July 25, 2012, and in his amended schedules submitted September 4, 2013, and September 13, 2013. Monsanto was an active participant in Debtor's first bankruptcy to the point of filing an adversary proceeding, No. 11-80201-jw, against Debtor. Given this fact, the Court has difficulty discerning how Monsanto was left off Debtor's schedules until December 10, 2012. For these reasons, the Court concludes this case should be dismissed based on Debtor's bad faith conduct.

## CONCLUSION

For the reasons set forth herein, the motion to dismiss filed by Horry County State Bank and joined by First Citizens Bank & Trust Company and the Chapter 12 Trustee is granted. This case is hereby dismissed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**03/07/2013**



Entered: 03/07/2013

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina